OPINION
{¶ 1} Defendant-appellant Gary V. Buckner appeals from his conviction and sentence, following a no-contest plea, on one count of Carrying a Concealed Weapon. Buckner's assigned counsel has filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, concluding that he could find no potential assignments of error having *Page 2 
arguable merit. By entry filed herein on May 2, 2007, this court has provided Buckner with the opportunity to file his own, pro se brief, but he has not done so.
 {¶ 2} The facts are ably set forth by the trial court in its decision overruling Buckner's motion to suppress:
 {¶ 3} ". . . on August 12, 2005, around 7 p.m., K-9 unit Officer Moeggenberg with K-9 Lola [a drug-sniffing dog that Moeggenberg routinely carries with him] conducted a traffic stop on the vehicle driven by the Defendant for no front plate displayed. The Defendant was the sole occupant of the vehicle. Officer Moeggenberg approached on the passenger side of the vehicle. The officer informed the Defendant of the reason for the stop. The Defendant acknowledged that it was his vehicle and he had not put on the new license plate yet. While having this routine discussion, the officer noticed what he immediately recognized to be marijuana on the front passenger seat in plain view. The officer then asked the Defendant to step out of the vehicle, explaining that he saw marijuana on the seat. While walking to the back of his vehicle, the Defendant, on his own initiative, told the officer that he had a marijuana joint in the ashtray.
 {¶ 4} "Officer Moeggenberg let his trained narcotics dog out to conduct a free air sniff. The Defense stipulated to the certification of the dog and the handler (Officer Moeggenberg). The narcotics dog then alerted on the exterior rear and passenger side of the vehicle. The dog then alerted on the glove box on the interior of the vehicle.
 {¶ 5} "Based on that alert, Officer Moeggenberg tried to open the glove box and it was locked. The Defendant claimed he did not have the key. The officer was opened [sic] the glove box about half an inch with a screwdriver and could see a gun and bags of *Page 3 
marijuana in plain view. The officer then opened the glove box all the way and recovered a loaded gun, loaded magazine, scale and bags of marijuana. Prior to that, the officer saw a marijuana joint in plain view in the ashtray and retrieved it. The Defendant was placed under arrest for CCW and Trafficking in Marijuana. The officer read Defendant his rights and the Defendant stated he wanted to talk to a lawyer. No further questioning was done. A search of the Defendant incident to that arrest revealed a key in his sock. When the officer found the key, the Defendant spontaneously stated, `You got me. That's the key to the glove box.' The Defendant was cited for no front plate under O.R.C. § 4503.21. The officer testified that Defendant pled guilty and paid the fine."
 {¶ 6} We have read the transcript of the suppression hearing, at which Officer Moeggenberg was the sole witness, and there is evidence in the record of that hearing to support all of the trial court's findings of fact.
 {¶ 7} The trial court then laid out its reasoning for finding the motion to suppress to be without merit:
 "THE ACTIONS OF THE POLICE DID NOT VIOLATE THEDEFENDANT'S CONSTITUTIONAL RIGHTS, THEREFORE, EVIDENCE OBTAINED IS ADMISSIBLE {¶ 8} "A police officer may lawfully stop a vehicle if he has a reasonable articulable suspicion that the motorist has engaged in criminal activity including a minor traffic violation. The stop is constitutionally valid regardless of the officer's underlying motivation. State v. Chapel, (March 8, 2000), Guernsey App. No. 99-CA-18. In this case, the officer testified that he conducted a traffic stop for no front plate and the Defendant was cited for that violation. *Page 4 
 {¶ 9} "The time lapse for the traffic stop to the Defendant's arrest was about ten minutes. Officer Moeggenberg observed what he immediately recognized as marijuana in plain view, giving him probable cause to search the entire vehicle. The Plain View Doctrine is a well-established exception to the warrant requirement. Evidence in plain view is subject to seizure when the intrusion affording the plain view is lawful (or the officer is lawfully in place) and the incriminating nature is immediately apparent. Texas v. Brown, (1983), 460 U.S.730,103 S.Ct. 1535, 75 L.Ed.2d 502; Coolidge v. New Hampshire, (1971), 403 U.S. [443,91 S.Ct. 2022]. `Immediately apparent' means the police have probable cause to associate an object with criminal activity. An officer may rely on training and experience in recognizing evidence of a crime. State v.Smith, (June 21, 1999), Stark App. No. 1998 CA 00322; State v.Paschal, (August 2, 1996), Montgomery App. No. 15394. The officer testified that he has participated in numerous arrests involving marijuana and he is familiar with the appearance and characteristics of marijuana. Based on the training and experience, it was immediately apparent to the officer that it was marijuana on the front passenger's seat. `Probable Cause' is a flexible, common sense standard, which merely requires that the facts available to the officer would warrant a man of reasonable caution and belief, that certain items may be contraband or stolen property or useful as evidence of a crime. It does not demand any showing that such a belief be correct or more likely true than false. State v. Paschal, supra.
 {¶ 10} "Once a police officer has probable cause to believe a vehicle contains contraband, the officer may search a validly stopped motor vehicle. State v. Madden, (February 20, 2001) Union App. No. 14-2000-32. The well-established automobile exception to the warrant requirement permits police to conduct a warrantless search of a *Page 5 
vehicle. State v. Madden, supra. The mobility of automobiles often creates exigent circumstances and concern that evidence will be lost or destroyed. See State v. Madden, supra. See also, State v. Mills, (1992),62 Ohio St. 3d 357, 367, 582 N. E.2d 972, citing California v.Carney, (1985), 471 U.S. 386, 85 L. Ed. 2d 406, 105 S. Ct. 2066. The driver of a vehicle on a public street has a diminished expectation of privacy in the vehicle that he or she is driving. State v. Madden, supra; State v. Ballard (February 16, 1994) Auglaize App. No. 2-93-12, unreported. See also California v. Carney, supra.
 {¶ 11} "Marijuana in plain view gives officers probable cause to search the entire vehicle. State v. Pryor, (May 27, 2005), Mont. App. No. 20800. See also State v. Taylor, (June 22, 1993), Franklin App. No. 93AP-161. In the case at bar, the officer sees marijuana and a narcotics dog smells additional marijuana. Just as in Taylor, because police had probable cause to conduct a warrantless search of Defendant's vehicle for marijuana, their search of the vehicle (including the glove box) and discovery of the hidden weapon did not violate Defendant's Fourth Amendment rights. The search of Defendant's vehicle, including the glove box, nevertheless did not violate Defendant's Fourth Amendment rights because, as previously noted, police already had probable cause to conduct a warrantless search of that vehicle for marijuana as a result of having seen it and a narcotics dog having alerted on it. SeeState v. Moore, 90 Ohio St.3d 47, 2000 Ohio 10, 734 N.E.2d 804 andState v. Paschal, supra.
 {¶ 12} "In State v. Greenwood, (May 28, 2004), Montgomery App. No. 19820, the issue was whether an officer's observation of a small quantity of marijuana in a car provides reasonable suspicion to believe that the vehicle contains drugs. The Court stated, `This question answers itself and requires no elaboration on our part.' The Court rejected *Page 6 
Greenwood's argument that the officer unlawfully searched the suitcase in the vehicle's trunk. The search was held permissible for two reasons. First, the Ohio Supreme Court has recognized that `once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.' State v. Greenwood, supra citing State v.Moore, supra (holding that the odor of marijuana justified an automobile search). Second, the drug dog's alert on the vehicle gave the officers probable cause to search it.
 {¶ 13} "In Greenwood, the Court held that the officer's observation of marijuana on the passenger seat and floorboard gave him probable cause to believe that the vehicle contained contraband. Therefore, he was entitled to search the entire vehicle, including the trunk and its contents. State v. Greenwood, supra and citing United States v.Ross (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.
 {¶ 14} "In State v. Earley, (August 9, 2002) Montgomery App. No. 19161, officers conducted a traffic stop on Defendant's vehicle. The officers could smell marijuana, so they had Defendant step from the vehicle. A handgun was found under the seat. The officers then searched the locked glove box and found ammunition and crack cocaine. (The key to the glove box was in the console). The Court upheld the warrantless search and seizure of the drugs, gun and ammunition based on probable cause from the odor of marijuana. The Court stated, `Because the police has [sic] probable cause to conduct a warrantless search of Defendant's vehicle for marijuana, their search of the vehicle and discovery of the hidden weapon did not violate Defendant's Fourth Amendment rights.' State v. Earley, supra; State v. Moore, supra. The fact that the officers opened a locked *Page 7 
glove box did not make the seizure of its contents unlawful. The crack cocaine (seized from the locked glove box) and ammo were admissible in evidence and the Defendant's convictions for possession of cocaine (seized from the locked glove box) and carrying a concealed weapon were upheld. State v. Earley, supra.
 {¶ 15} "This case is distinguishable from the recent decision ofState v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, which dealt with the search of the trunk based on the officer smelling marijuana and evidence obtained also from Defendant's statements. In this case, there is marijuana in plain view and a trained narcotics dog performed a free air sniff and alerted on the glove box. Once the officer saw the gun, the Defendant was arrested. After the Defendant was arrested, the officer opened the glove box all the way and seized the gun, a loaded magazine, marijuana, and a scale.
 {¶ 16} "The Defense stipulated to the qualifications of the narcotics dog and the officer/handler, so the validity of the alerts is not disputed. A K-9 free air sniff is not a search under the Fourth Amendment, so there is no need for reasonable suspicion or probable cause to conduct a K-9 sniff. State v. Pryor, supra; State v.Hudson, (June 18, 2004) Miami App. No. 2003-CA-39; Illinois v.Caballes (2005), 534 U.S. 160[,___.] L. Ed. 2d 842, 125 S.Ct. 834. When a trained narcotics dog alerts on a lawfully stopped vehicle, an officer has probable cause to search the vehicle. State v. Pryor, supra andState v. Greenwood, supra. Once a narcotics-trained dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle. State v. Greenwood, supra. In Greenwood, the issue was whether an officer's observation of a small quantity of marijuana in a car provides reasonable suspicion to believe that the vehicle contains drugs. The Court stated, `This question answers itself and requires no elaboration on or part.' *Page 8 
The Court did not (and Courts still have not) put any limitations on a search incident to a trained narcotics dog alert(s).
 {¶ 17} "The Court rejected Greenwood's argument that the officer unlawfully searched the suitcase in the vehicle's trunk. The search held was permissible under the well-established automobile exception to the warrant requirement. State v. Greenwood, supra citing State v.Moore, supra (holding that the odor of marijuana justified an automobile search). In Greenwood, the Court held that the officer's observation of marijuana on the passenger seat and floorboard gave him probable cause to believe that the vehicle contained contraband. Therefore, he was entitled to search the entire vehicle, including the trunk and its contents. State v. Greenwood, supra citing United States v. Ross, supra.
 {¶ 18} "'The independent search of Greenwood's suitcase also was permissible because the dog had alerted on the vehicle's trunk. Once a narcotics dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle.' [**9] State v.Greenwood, supra; State v. Keller, (January 14, 2000), Montgomery App. No. 17896. The narcotics dog `hit' on Greenwood's trunk provided the officer with probable cause to search the suitcase contained [**10] therein. State v. Greenwood, supra.
 {¶ 19} "In Pryor, the K-9 alerted and a search revealed marijuana in the passenger side. The officer then searched the engine compartment and found cocaine. The Court held that the K-9's alert gave officers probable cause to search the vehicle and the search of the engine compartment was permissible. In State v. Chapel, supra, the Court held that `because an accredited drug dog alerted to the presence of drugs in the vehicle, the officer had probable cause to search theentire vehicle.' In the case at bar, the trained narcotics *Page 9 
dog alerted specifically on the glove box, giving the officer independent probable cause to search the glove box without a warrant under the automobile exception.
 {¶ 20} "Regarding the issue of the locked glove box, the Courts have consistently treated open/closed, also meaning locked/unlocked, as one in [sic] the same. In Chapel, the Court held, `Both Ohio and federal cases have held that an officer has probable cause to search a vehicle for contraband once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle . . . The scope of a warrantless automobile search is determined by the scope of an officer's probable cause to believe a vehicle contains contraband or evidence of a crime, he may search the entire vehicle. Therefore, if an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle.' State v. Chapel, supra.
 {¶ 21} "The Court also stated that these dogs are trained to lead their handler directly to the source of the scent. `The only practical rule is to permit a thorough search of the vehicle.' State v.Chapel, supra. In the case at bar, the officer did not need to search the entire vehicle, though he is permitted, due to this drug dog leading him to the source: the glove box. At this point, there was probable cause to believe drugs were in the glove box. Given the exigent nature of automobiles, the limited reasonable detention and impracticality of waiting on a warrant, the officer was justified in the warrantless search of the glove box. Officer Moeggenberg testified that he spoke with his Sergeant who instructed him to search the glove box based on their policy to search the entire vehicle once a drug dog alerts on it.
 {¶ 22} "In State v. Mackey, (September 28, 2005), Wayne App. No. 05CA0029, a passenger in a stopped vehicle was patted down and drugs were found. That person was *Page 10 
arrested and the other occupants were taken out of the car. The officer then searched the vehicle. The glove box was locked but the Defendant had the key, which the officer took. (No consent was given). The officer found and seized cocaine and marijuana from the locked glove box. The Court quoted the Ohio Supreme Court in State v. Murrell (2002),94 Ohio St.3d 489, 496, 2002 Ohio 1483, 764 N.E.2d 986 and upheld the search of the locked glove compartment, also relying on Belton, [infra], being a container or compartment, any object capable of holding something, including closed or open glove compartments. InMurrell, the probable cause to arrest a passenger justified the search of the locked glove box. The Court did not consider this Murrell's assertion that police needed independent probable cause to justify the search. State v. Murrell, supra.
 {¶ 23} "In State v. Moxley, (November 24, 1982) Fairfield App. No. 22-CA-82, the Defendant was arrested for OMVI and his vehicle was towed. Pursuant to the police department's tow policy, an inventory search was done (another established exception to the warrant requirement). A handgun was found in a locked glove compartment. The Defendant claimed this search and seizure was in violation of his constitutional rights because the glove box was locked. The Court rejected that argument citing to New York v. Belton (1981), 453 U.S. 454, 69 L. Ed. 2d 768 andUnited States v. Ross, supra. The police are permitted to search the vehicle, including containers and compartments. The Court stated, ` In Belton, supra, a footnote defined a container within a vehicle as including "closed or open glove compartments." Different search criteria was [sic] made applicable to motor vehicles which were not afforded the same degree of privacy as a home. ` State v. Moxley, supra. The Court held that `the closed glove compartment' subject to search, based on probable cause, includes a locked or unlocked glove compartment.State v. *Page 11 Moxley, supra. In reference to the case at bar, it does not matter whether the glove box was locked or unlocked once there is probable cause to search it.
 {¶ 24} "Officer Moeggenberg had probable cause to search the vehicle based on his observation of marijuana in plain view. He had independent probable cause to search the vehicle based on the K-9 sniff. Because he had independent probable cause, he was justified in searching the glovebox. Due to the drug dog's alert on the glovebox, the target of the search was the glovebox. Even though the glovebox was locked, the officer would have inevitably discovered the gun and drugs. The officer would need probable cause to obtain a search warrant, but he already had probable cause to search the vehicle without a warrant anyway. TheFarris case does not apply to this case. Farris dealt with the smell of marijuana, not observations of it. Farris dealt with what an officer could smell, not a trained narcotics dog. That case may have been decided differently had a drug dog been involved.
 "STATEMENTS MADE BY THE DEFENDANT WERE NOT OBTAINED IN VIOLATION OF THE CONSTITUTION AND ARE THEREFOREADMISSIBLE {¶ 25} "Miranda warnings are required only when both custody and interrogation coincide. State v. Perry, (October 9, 1996), Summit App. No. 17754. The Miranda safeguards apply only to situations in which there is custodial interrogation of the Defendant. State v. Jacks, (December 14, 1992), Butler App. No. CA 92-05-091, citing Miranda v.Arizona, (1966), 384 U.S. 436, 86 S. Ct. 1602. `Custodial interrogation' means questioning initiated by law enforcement officers after a person has been taken into custody or deprived of their freedom in a significant way. `Interrogation means words or actions on the part of police that the police should know are reasonably likely to elicit an *Page 12 
incriminating response from the suspect.' Rhode Island v. Innis, (1980), 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90.
 {¶ 26} "No evidence was obtained as a direct result of Defendant's statements. The key to the glove box was found as a result of the search incident to Defendant's arrest. After his arrest and during the search of his person incident to that arrest, as soon as the officer found a key in the Defendant's sock, the Defendant said, `You got me. That's the key to the glove box.' The joking nature of the comment is indicative of its uncoerced voluntariness.
 {¶ 27} "The officer did not ask the Defendant any questions. Allowing the Defendant to see what the officer removed from his person was not conduct intended to elicit an incriminating response. The police already obtained the evidence and Defendant was already under arrest. Also, the officer Mirandized the Defendant prior to Defendant making this statement. The Defendant invoked his right to an attorney and there was no interrogation and the Defendant's invocation of his rights was scrupulously honored. The Defendant was aware of his rights at the time he blurted out the comment about the key.
 {¶ 28} "The Defendant's voluntary comments are not covered by the Miranda ruling and volunteered statements are not barred from admission into evidence. State v. Perry, supra. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. State v. Perry, supra. Statements that are the product of Defendant's own initiative in the absence of any other words or actions likely to elicit an incriminating response are not subject to Miranda protections. State v. Perry, supra. The purpose of the Miranda rule is to provide protection from coerced confessions, not to afford a suspect the opportunity to retract his own inopportune utterances. State v.Perry, supra. *Page 13 
A statement made after valid Miranda warnings is only involuntary if the evidence shows that the suspect's will was overcome due to coercive police conduct. A valid search incident to a lawful arrest is not coercive, it's routine policy and procedure. The nature of Defendant's statement suggests his will was not overcome. He jokingly blurted it out; it was not in response to any questions asked by the officer.
 "CONCLUSION {¶ 29} "For the reasons detailed herein and all reasons stated on the record, Defendant's Motion to Suppress is OVERRULED." (Italics, underlining, and bolding in original.)
 {¶ 30} We find no arguable flaw in the trial court's reasoning in its decision overruling Buckner's motion to suppress.
 {¶ 31} We have independently reviewed the record, in accordance with our obligation under Anders v. California, supra, and we have found no potential assignments of error having arguable merit. The plea colloquy between Buckner and the trial court complied with Crim. R. 11. Despite the fact that Buckner had a prior felony offense in his record, the trial court did not impose a sentence of incarceration, but imposed community control sanctions.
 {¶ 32} In short, we conclude that this appeal is wholly frivolous. Accordingly, the judgment of the trial court is Affirmed.
 WOLFF, P.J. and GRADY, J., concur. *Page 14 
Copies mailed to:
Christopher B. Epley
Carley J. Ingram, Esq.
 Hon. John W. Kessler *Page 1