[Cite as *State v. Calimeno*, 2013-Ohio-1177.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98376

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANGEL CALIMENO

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555340

**BEFORE:** Celebrezze, P.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** March 28, 2013

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Andrew Rogalski
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Angel Calimeno, appeals from his convictions in the Cuyahoga County Court of Common Pleas. Appellant argues that the trial court erred in denying his motion to suppress evidence, that his convictions are not supported by legally sufficient evidence, and that his convictions are against the manifest weight of the evidence. After careful review of the record and pertinent case law, we affirm.

{¶2} On October 12, 2011, appellant and codefendant, Rafael Perez, were indicted for the crimes of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree; theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree; and vandalism in violation of R.C. 2909.05(A), a felony of the fifth degree.

{¶3} Prior to trial, appellant sought the suppression of evidence seized by the West Tennessee Violent Crime and Drug Task Force in connection with a traffic stop of a vehicle driven by appellant on October 9, 2011. The trial court held a suppression hearing on January 6, 2012, and heard testimony from two witnesses — Special Agent John Carter of the West Tennessee Violent Crime and Drug Task Force and Detective James Lobenthal of the Brecksville Police Department. On January 9, 2012, the trial court denied the motion in regard to the physical evidence seized by the West Tennessee Violent Crime and Drug Task Force, ruling that the stop and search was constitutional.

The trial court did, however, rule that any inculpatory statements made by appellant after he was under custodial interrogation would be excluded from trial.

{¶4} Appellant's jury trial commenced on April 10, 2012. The following evidence was adduced at trial. At approximately 10:00 a.m. on October 9, 2011, Officer John Carter of the West Tennessee Violent Crime and Drug Task Force was patrolling Interstate 40 in Tennessee. While monitoring westbound traffic from a stationary position, Officer Carter observed a silver Toyota crest a hill in the fast lane and abruptly switch lanes behind an 18-wheeler truck without using a turn signal. Officer Carter pulled out onto the highway and caught up with the Toyota. While following the Toyota, Officer Carter observed it inch closer behind the 18-wheeler until it was "less than a car length or right at a car length" behind the truck while traveling approximately 60 miles per hour. Based on these perceived traffic infractions, Officer Carter executed a traffic stop of the Toyota.

{¶5} Officer Carter approached the passenger side of the Toyota to advise the occupants of the basis of his stop and to request the driver's license, registration, and proof of insurance. He identified appellant as the driver of the vehicle and codefendant Perez as the front-seat passenger. He testified that appellant immediately appeared to be nervous. He explained that appellant's voice quivered when he responded to inquiries and that his hands were shaking. Officer Carter described the vehicle as having a "lived in look" based on the trash on the floorboards and a bucket of change in the back seat. When asked, appellant provided Officer Carter with a rental car contract, which stated

that the vehicle was rented to a non-present third-party named Omar Reyes Ortega and was due back in Texas by October 6, 2011, three days prior to the stop.

{¶6} At that time, Officer Carter asked appellant to step outside the vehicle, where he questioned appellant about his travel plans and history, about Perez, and whether there was anything illegal in the vehicle. When asked about whether the vehicle contained large sums of money, appellant was reluctant to answer before responding "no." Officer Carter then repeated the same routine questions to Perez. Officer Carter testified that appellant and Perez provided conflicting accounts of where they had traveled from and did not know each other's last names. Additionally, Perez stated that he had approximately two thousand dollars in his wallet. Based on his experience, observations, and the responses of appellant and Perez, Officer Carter suspected that the occupants may have been engaged in some further criminal activity. Officer Carter returned to his vehicle to call for backup.

{¶7} Thereafter, Officer Carter requested appellant's consent to search the vehicle using a standard consent-to-search form. Officer Carter testified that appellant consented to the search and signed the form without hesitation. Having obtained voluntary consent, Officer Carter searched the vehicle and located the following items: $11,434 in cash; a bucket of coins and coin wrappers; a large stack of foreign currency; several pieces of women's jewelry; four cell phones; a Home Depot receipt; two pieces of paper with handwritten lists of names and locations of Chinese restaurants throughout various cities

in northeast Ohio; a GPS device; and an old bank deposit slip of Broadview Heights, Ohio, resident Jennie Wee.

{¶8} Based on the items recovered from appellant's vehicle, Officer Carter contacted the Broadview Heights Police Department and learned that Jennie Wee lived in Brecksville, Ohio, and owned a Chinese restaurant. Officer Carter photographed the items recovered from appellant's vehicle and emailed the photos to Detective James Lobenthal of the Brecksville Police Department. Subsequently, Det. Lobenthal flew to Memphis, Tennessee, to retrieve the evidence discovered in appellant's vehicle.

{¶9} Officer Michael John Bauman of the Brecksville Police Department testified that on October 9, 2011, he was dispatched to investigate the residence of Jennie Wee. Officer Bauman testified that on arriving at the Wee residence, he knocked on the front door and received no response. While examining the perimeter of the residence, Officer Bauman observed a red purse on a paved walkway in the backyard and detected a shattered rear window. Believing a potential home invasion had occurred, Officer Bauman radioed for additional units to respond. Thereafter, Brecksville police entered the residence through the broken window and discovered that the home had been "ransacked." Officer Bauman further testified that there was significant damage to the master bedroom, including large "ruts or grooves" in the wooden floor.

{¶10} Using the Home Depot receipt recovered from appellant's vehicle, the Brecksville police obtained video evidence from a Home Depot in Macedonia, Ohio. The surveillance video captured two adult males, including an individual matching

appellant's general description, purchasing three pieces of wrecking equipment (construction-type pry bars) at 8:51 p.m. on October 8, 2011. Significantly, Officer Carter confirmed that the Home Depot receipt recovered from appellant's vehicle memorialized the purchase of three pieces of wrecking equipment at the Macedonia store location at 8:51 p.m. on October 8, 2011.

{¶11} Additionally, Officer Bauman testified that appellant's GPS device led the Brecksville police to a Motel 6 in Richfield, Ohio. Officer Bauman made contact with the hotel manager, Drushar Shah, and discovered that a room had been rented to Omar Reyes Ortega, the individual identified on the Toyota's rental agreement, on two consecutive nights — October 7 and October 8. During the course of his investigation, Officer Bauman searched a large construction dumpster located near the hotel room rented to Ortega. Inside the dumpster, Officer Bauman discovered numerous articles and documents belonging to Ms. Wee, including photographs, receipts, tax documents, credit cards, mail, social security cards, and a passport. Subsequently, officers recovered the Wees' safe from a wooded area just miles from the Motel 6.

{¶12} Motel 6 employee Eric Nimon testified that he witnessed three individuals in the rented room that weekend and described them as "African American or dark-complexioned Mexicans." He saw them go in and out of the room on several occasions and noticed a silver or grey sedan parked outside the room.

{¶13} Jennie Wee testified that she lives at the residence on Hunting Valley Lane in Brecksville, Ohio, with her husband and two children and owns and operates Frankie's

Wok, a Chinese restaurant. Mrs. Wee testified that on Saturday, October 8, she and her family went out of town for the day. Mrs. Wee testified that prior to leaving, she asked her friend Rudy Mandinec to mow her grass while she and her family were away, and he agreed to do this. When they left, all doors and windows were locked and no one was given permission to enter the residence. Mrs. Wee testified that she was contacted by the Brecksville Police on October 9, 2011, at approximately 4:00 p.m. and immediately returned home. Mrs. Wee testified that her home was in disarray, and the safe previously located in her bedroom closet was missing. According to Mrs. Wee, the safe contained approximately "17 to 18,000 in cash" including many two-dollar bills, various items of jewelry, tax papers, social security cards, foreign currency, wrapped coins, and receipts. Subsequently, Mrs. Wee confirmed that the items recovered from appellant's vehicle and the Motel 6 dumpster belonged to her. Finally, Mrs. Wee testified that the substantial damage to her property required her to pay a $1,000 deductible to her insurance company and resulted in approximately $14,000 in repairs.

{¶14} At the conclusion of trial, the jury found appellant guilty on all counts. On May 11, 2012, the trial court held a sentencing hearing and ordered appellant to pay restitution in the amount of $1,000 and serve an aggregate three-year term of imprisonment.

{¶15} Appellant now brings this timely appeal, raising two assignments of error for review.

Law and Analysis

I. Manifest Weight and Sufficiency of the Evidence

{¶16} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence.

{¶17} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶18} "A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion." *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to

grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins, supra.*

{¶19} We are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶20} In the instant case, appellant was convicted of burglary under R.C. 2911.12(A)(2), which provides in pertinent part:

> [n]o person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶21} Appellant was also convicted of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"

{¶22} Finally, appellant was convicted of vandalism in violation of R.C. 2909.05(A), which states that "[n]o  person shall knowingly cause serious physical harm

to an occupied structure or any of its contents." "Serious physical harm" means "physical harm to property that results in loss to the value of the property of one thousand dollars or more." R.C. 2909.05(F)(2).

{¶23} In challenging the sufficiency of the evidence supporting his convictions, appellant relies solely on his broad contention that the state failed to present any direct evidence to establish that he was the individual who unlawfully entered the Wee residence. Appellant submits that it is not sufficient to stack inference upon inference in order to reach the conclusion that he was present in the Wee residence at the time the alleged offenses were committed. Thus, appellant argues that "at best, the evidence at trial might have supported a conviction for receiving stolen property, but certainly not for the other charged offenses." For the following reasons, we disagree.

{¶24} Although the state's case depends on circumstantial evidence, it is well established that circumstantial evidence carries the same weight as direct evidence and "is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). *See also State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978); *State v. Nevius*, 147 Ohio St. 263, 274-275, 71 N.E.2d 258 (1947). Indeed, the body or substance of a crime "may be established by circumstantial evidence where the inference of the happening of the criminal act complained of is the only probable or natural explanation of the proven facts and circumstances." *Nevius* at

paragraph five of the syllabus.  In fact, circumstantial evidence may, at times, be "more certain, satisfying and persuasive than direct evidence."  *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990).

{¶25} In the case subjudice, the state presented sufficient evidence to support the jury's determination that appellant committed the offenses of burglary, theft, and vandalism.  The evidence and testimony presented at trial demonstrated that on the evening of October 8, 2011, the Wee residence was unlawfully entered through a broken back window.  As a result of the burglary, the Wee residence was "ransacked" and suffered significant property damage. Additionally, various personal documents and items were taken from the residence, including a large safe previously located in the Wees' bedroom closet. According to Mrs. Wee, the safe contained approximately $17,000 to $18,000 in cash including many two-dollar bills, various items of jewelry, tax papers, social security cards, foreign currency, wrapped coins, receipts, and other paperwork.

{¶26} Subsequently, appellant's vehicle was stopped by Officer Carter in western Tennessee at approximately 10:00 a.m., or less than 24 hours after the Wee residence was unlawfully entered.  Following the lawful detention and subsequent search of appellant's vehicle, Officer Carter discovered $11,434 in cash and various documents, articles, and pieces of property belonging to the Wees.  Mrs. Wee later confirmed that the items recovered from appellant's vehicle belonged to her and were previously located inside her safe.  *See State v. Bice*, 12th Dist. No. CA2008-10-098, 2009-Ohio-4672, ¶ 31 ("the unexplained possession of recently stolen property may give rise to a permissible

inference from which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of burglary or theft").

{¶27} In addition to the evidence retrieved from appellant's vehicle, further investigation by the Brecksville Police Department led officers to a Home Depot in Macedonia, Ohio, where they discovered video images of two dark-complexioned males purchasing three pieces of wrecking equipment at 8:51 p.m. The time, date, and materials purchased matched the Home Depot receipt discovered inside appellant's vehicle, thereby indicating that appellant was in Northeast Ohio at the time the Wee residence was unlawfully entered. Furthermore, appellant's GPS device led officers to a Motel 6 in Richfield, Ohio, where officers learned that Omar Reyes Ortega had rented a room on two consecutive nights — October 7 and October 8. Motel 6 employee Eric Nimon testified that he witnessed a silver or grey sedan outside the room and Ortega with two individuals who matched appellant's and Perez's descriptions. Finally, Officer Bauman testified that he retrieved numerous paper documents belonging to Mrs. Wee from the dumpster located just outside the motel room rented to Ortega.

{¶28} Collectively, the circumstantial evidence adduced at trial, coupled with appellant's undisputed possession of Jennie Wee's recently stolen property, permitted the jury to conclude that appellant unlawfully entered the Wee residence and committed the alleged offenses once inside. Construing this evidence and the reasonable inferences therefrom in a light most favorable to the state, as we must, a rational trier of facts could find all of the essential elements of burglary, theft, and vandalism.

**{¶29}** Furthermore, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against appellant's convictions. The jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses and was free to find the testimony of the state's witnesses to be credible. The testimony presented by the state's witnesses was consistent and provided a causal link between the unlawful entry into the Wee residence on October 8, 2011, and appellant's arrest in western Tennessee on October 9, 2011. Deferring to the jury's assessment of the credibility of the witnesses, as we must, we cannot say that the trier of fact lost its way and performed a miscarriage of justice in convicting appellant of burglary, theft, and vandalism.

**{¶30}** Appellant's first assignment of error is overruled.

## II. Motion to Suppress Evidence

**{¶31}** In his second assignment of error, appellant argues that the trial court erred when it denied his motion to suppress.

**{¶32}** Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104, 651 N.E.2d 965; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

**{¶33}** Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995).

**{¶34}** We find that the trial court's findings of fact were supported by competent and credible evidence. Accordingly, we turn to the constitutionality of the search and seizure.

**{¶35}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable and subject to a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of those exceptions is the rule regarding investigative stops announced in *Terry*. Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*, *supra*. Thus, a police officer may lawfully stop a vehicle, motorized or otherwise, if he has a reasonable, articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *See State v. Buckner*, 2d Dist. No. 21892, 2007-Ohio-4329, ¶ 8. Moreover, the

stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091.

**{¶36}** In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988). Thus, "if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." *Euclid v. Jones*, 8th Dist. No. 97868, 2012-Ohio-3960, ¶ 16, citing *State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083, ¶ 8.

**{¶37}** Under Tennessee law, it is impermissible to follow another vehicle more closely than is reasonable. Section 55-8-124 of the Tennessee Code specifies that: "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway."

**{¶38}** Here, the evidence presented at the suppression hearing established that Officer Carter observed appellant's vehicle "shift or jerk from the fast lane into the slow lane of the highway behind a tractor trailer" and then proceed to follow "too close or at an unsafe distance behind the tractor trailer." Under these circumstances, we agree with the trial court that Officer Carter had reasonable suspicion to conduct an investigatory stop of

appellant. Accordingly, regardless of the officer's motivation, the initial stop was lawful based on the observed traffic violation.

**{¶39}** Having established that the initial seizure of appellant was constitutional, our inquiry turns to the circumstances following the stop. Generally, "the duration of the detention should be limited to the time necessary to make the traffic stop and issue a citation." *State v. Foster*, 87 Ohio App.3d 32, 40, 621 N.E.2d 843 (2d Dist.1993). "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Dieckhoner*, 8th Dist. No. 96694, 2012-Ohio-805, ¶ 13. However,

> [i]f during the initial valid detention of a motorist, a police officer notices additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, then the officer may further detain the motorist and conduct a more in-depth investigation, including a request for consent to search.

*State v. Studley*, 2d Dist. No. 2010 CA 81, 2011-Ohio-5563, ¶ 57.

**{¶40}** "In deciding whether a reasonable suspicion exists, courts must examine the 'totality of the circumstances' of each case to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *State v. Spindler*, 4th Dist. No. 01CA2624, 2002-Ohio-2037, quoting *United States v. Arvizu*, 534 U.S. 266, 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**{¶41}** In forming a reasonable, articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Citations omitted.) *State v. Troutman*, 3d Dist. No. 9-11-17,

2012-Ohio-407, ¶ 25, quoting *Arvizu* at 273-274. Therefore, determining whether the officer's actions were justified depends on the totality of the circumstances, which must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991).

**{¶42}** Based on the distinctive combination of factors present in this case, we find that Officer Carter had a reasonable, articulable suspicion to further detain appellant. The facts presented at the suppression hearing demonstrated that, while conducting the traffic stop, Officer Carter learned additional information and observed behavior that raised a reasonable suspicion of criminal activity beyond the initial traffic stop and warranted further investigation. These "specific and articulable facts" included the contents of the vehicle, appellant's nervousness, the inconsistent factual accounts given by appellant and Perez, and, most importantly, the fact that neither appellant's nor Perez's name appeared on the rental agreement.

**{¶43}** We recognize that some courts have held that general nervousness is not indicative of criminal conduct. *See State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383 (2d Dist.); *but see State v. Christopher*, 12th Dist. No. CA2009-08-041, 2010-Ohio-1816, ¶ 26 ("Ohio courts have held that '[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion'"). However, in the instant case, appellant's suspicious behavior was coupled with inconsistent answers to basic questions and the unauthorized operation of a vehicle rented to a non-present third

party.  Thus, the totality of the facts herein would cause more than a mere inchoate hunch or unparticularized suspicion in a reasonable police officer.

{¶44} Accordingly, we conclude that the totality of the circumstances, combined with rational inferences that can be drawn from the situation, provided Officer Carter with reasonable suspicion to lawfully continue appellant's detention in order to further investigate the matter.

{¶45} As to the subsequent search, we note that a recognized exception to the Fourth Amendment's warrant requirement is a search conducted based on consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  The state must prove that the consent was freely and voluntarily given, as demonstrated by a totality of the circumstances.  *Id.*  The essential question is whether the consent was voluntary or the product of express or implied duress  or coercion, as determined from the totality of the circumstances.  *Id.* at 227.

{¶46} The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "Police officers act in full accord with the law when they ask citizens for consent."  *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).

{¶47} In this matter, the evidence presented at the suppression hearing demonstrated that appellant voluntary consented to the search of his vehicle.  It is

undisputed that appellant gave his consent "without reserve or hesitation" and signed a consent form that stated, in relevant part, "I further understand that my consent is freely and voluntarily given with the right to refuse and without any threats, coercion, or promises of immunity by any agent of the West Tennessee Judicial Violent Crime and Drug Task Force." Moreover, there is no indication in the record to support appellant's position that the police-dominated atmosphere negated the voluntary nature of his consent. Thus, based on the circumstances of the instant case, we find the trial court properly determined that Officer Carter obtained appellant's voluntary consent before performing the search.

**{¶48}** Appellant's second assignment of error is overruled.

**{¶49}** Based on the foregoing, we affirm appellant's convictions and the trial court's denial of appellant's motion to suppress evidence seized from his vehicle.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
TIM McCORMACK, J., CONCUR