[Cite as *State v. Tritt*, 2013-Ohio-3644.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                                    :
                                                 :      Appellate Case No. 25475
            Plaintiff-Appellee                   :
                                                 :      Trial Court Case No. 2011-CR-04329
v.                                               :
                                                 :
WESLEY T. TRITT                                  :      (Criminal Appeal from
                                                 :       Common Pleas Court)
            Defendant-Appellant                  :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of August, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

KRISTINE E. COMUNALE, Atty. Reg. #0062037, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
            Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Wesley T. Tritt appeals from his conviction and sentence for

Possession of Heroin in an amount less than one gram. Tritt contends that the trial court erred in overruling his motion to suppress evidence, because the police officer who discovered the heroin did not have reasonable grounds to conduct a pat-down.

**{¶ 2}** We conclude that the trial court did not err in overruling Tritt's motion to suppress. Accordingly, the judgment of the trial court is Affirmed.

## I. A Turn-Signal Violation Leads to a Traffic Stop, a Pat-Down Search for Weapons, and an Arrest for Possession of Heroin

**{¶ 3}** On the evening of December 25, 2011, Dayton Police Officers Mark Orick and Robert Clinger were on patrol near westbound State Route 35 when they observed a vehicle driven by Tritt preparing to turn from James H. McGee Boulevard onto the entrance ramp to State Route 35. Officer Orick and Tritt have differing versions as to what happened next.

**{¶ 4}** According to Officer Orick, he initiated a traffic stop of Tritt's vehicle when Tritt failed to activate his turn signal before turning onto the entrance ramp. Officer Orick approached the driver's side window of Tritt's vehicle, while Officer Clinger approached the passenger side. Officer Orick told Tritt that the traffic stop was initiated due to Tritt's failure to use his turn signal. Officer Orick asked for Tritt's driver's license. Tritt fumbled for his driver's license and began volunteering information about the fact that he was traveling from his girlfriend's place, but he could not recall her address. Tritt's hand was shaking badly when he handed his driver's license to Officer Orick, and Tritt appeared very nervous. Tritt also began fumbling around to get his insurance card, despite the fact that Officer Orick had not yet asked for any insurance information.

{¶ 5}     Officer Orick gave the driver's license to Officer Clinger, who returned to the cruiser to confirm Tritt's identification on the in-cruiser computer system.   While Officer Clinger ran Tritt's information, Officer Orick stood back from the driver's side window and observed Tritt make a call on a cellular phone.   Officer Clinger alerted Officer Orick that the in-cruiser computer system revealed Tritt had previously been charged with resisting arrest and assault.   Officer Orick then observed Tritt bend over and manipulate something in the area of his left leg for a few seconds.   Officer Orick became concerned that Tritt might be reaching for a weapon.

{¶ 6}     Officer Orick approached the driver's side door and ordered Tritt out of the vehicle.   Officer Orick opened the door, pulled Tritt out of the vehicle, and then placed him against the car.   Officer Orick began a pat-down of Tritt.   During the pat-down, a baggie full of capsules fell out of Tritt's pants.   Officer Orick immediately recognized the capsules as likely to contain heroin.   After a positive field test for heroin, Tritt was arrested.

{¶ 7}     Tritt's version of events is different.   According to Tritt, he did not fail to use his turn signal when he turned onto the ramp.   Tritt believed that he was being pulled over for a loud muffler.   Furthermore, Officer Orick did not tell Tritt that the traffic stop was due to a failure to use a turn signal, and Tritt did not recall receiving a ticket for failing to use his turn signal.   Tritt did subsequently pay a fine for failing to use his turn signal.   Tritt also disputes making any furtive movement toward his leg during the traffic stop.    Finally, Tritt testified that Officer Orick shook him for almost two minutes during the pat-down, until the heroin fell out of his pants.

{¶ 8}     The trial court found Officer Orick's testimony to be more credible.

## II. Course of the Proceedings

**{¶ 9}** Tritt was indicted on one count of Possession of Heroin in an amount less than one gram, a felony of the fifth degree in violation of R.C. 2925.11(A). Tritt moved to suppress evidence obtained during the traffic stop. After a hearing, the trial court overruled the motion to suppress.

**{¶ 10}** Tritt pled no contest to one count of Possession of Heroin, in an amount less than one gram. The trial court found Tritt guilty, sentenced him to five years of community control sanctions, and suspended his driver's license for six months. From the judgment of the trial court, Tritt appeals.

## III. The Police Officer Had Reasonable, Individualized
## Suspicion that Tritt Might Be Armed

**{¶ 11}** Tritt's sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED THROUGH THE UNLAWFUL PAT-DOWN BY THE OFFICER.

**{¶ 12}** "In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. * * * However, 'the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard.'" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 13. The trial court's findings of fact are supported by competent, credible evidence.

{¶ 13} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and temporarily detain individuals in order to investigate possible criminal activity, if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. A police officer may lawfully stop a vehicle if he has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 8.

{¶ 14} Officer Orick testified that he initiated a traffic stop because he witnessed Tritt fail to use his turn signal. Tritt testified that Officer Orick was mistaken – Tritt did use his turn signal. The trial court found Officer Orick to be more credible than Tritt, and adopted Officer Orick's version of what caused the traffic stop. The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 15} Officer Orick observed Tritt commit a traffic violation when Trick failed to use his turn signal in violation of R.C. 4511.39. We agree with the trial court that Officer Orick was entitled to stop the vehicle that Tritt was driving.

{¶ 16} The next issue is whether the pat-down was lawful. "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]" *State v. Stewart*,

2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. When a lawful stop is made, an officer may conduct a limited search for weapons if the officer reasonably believes the suspect may be armed. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). To justify a pat-down search, an officer must point to specific, articulable facts that create a "reasonable individualized suspicion that the suspect is armed and dangerous[.]" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18.

{¶ 17} "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27. The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.) *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 18} The trial court found that Officer Orick's pat-down search of Tritt was lawful. The trial court explained its reasoning:

[W]e have the testimony of Officer Orick that Mr. Tritt was acting unduly nervous. Granted nervousness is endemic in every encounter with police officers but the testimony here was that Mr. Tritt was acting overly nervous for the circumstances presented. That he had indicated that he was coming from his girlfriend's residence but he didn't know exactly what the house number was for that girlfriend's residence. And Officer Orick had been made aware by virtue of the communication made by Officer Clingner that Mr. Tritt had some record of resisting arrest or engaging in other violent activity and that Officer Orick

observed Mr. Tritt make a furtive movement inside the vehicle. All of which created a reasonable basis for Officer Orick to remove Mr. Tritt for purposes of officer safety and conduct a pat down search.

And granted there again is a conflict with regard to how the pat down search took place and under these circumstances, the Court is going to give credit to the explanation of events to Officer Orick as opposed to Mr. Tritt. That Officer Orick in the course of performing reasonable officer safety pat down search saw a baggie of drugs then fall to the ground.

Tr. 49.

{¶ 19} The trial court credited the testimony of Officer Orick over Tritt's testimony regarding the events that transpired after Officer Orick initiated the traffic stop. Officer Orick was faced with an abnormally nervous driver of a vehicle, who had committed a traffic violation. Moreover, Officer Orick was informed by his partner that Tritt was previously charged with resisting arrest and assault. Officer Orick then observed Tritt bend over in the front seat of his vehicle and begin manipulating something around his left leg. Officer Orick testified that he became concerned that Tritt may have a weapon, approached the driver's side door, and ordered Tritt out of the vehicle. Officer Orick then performed the pat-down, resulting in the discovery of the heroin.

{¶ 20} We conclude that the totality of the circumstances, including the abnormally nervous nature of Tritt, the information about Tritt's past resisting arrest and assault charge, and the observation of Tritt bending over and manipulating something around his left leg, provided Officer Orick with "reasonable individualized suspicion" that Tritt may be armed and dangerous.

Therefore, the trial court did not err in overruling Tritt's motion to suppress.

{¶ 21}   Tritt's sole assignment of error is overruled.

### IV. Conclusion

{¶ 22}   Tritt's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D Phipps
Kristine E. Comunale
Hon. Mary L. Wiseman