THE STATE OF OHIO, APPELLEE, *v.* LISIEWSKI, APPELLANT.

[Cite as State v. Lisiewski, 20 Ohio St. 2d 20.]

(No. 68-579—Decided October 29, 1969.)

*Mr. Lowell S. Petersen,* prosecuting attorney, for appellee.

*Mr. Jas. Slater Gibson,* for appellant.

CORRIGAN, J. The principal issue raised in this appeal is whether each of the houses entered was an "inhabited dwelling house" within the meaning of those words as used in Section 2907.09, Revised Code.

Appellant contends that the dwellings in question were "summer" homes which, although furnished, were

not occupied; that therefore they were not inhabited dwelling houses.

In construing an earlier version of Section 2907.09, Revised Code, this court, in *State* v. *Mason,* 74 Ohio St. 65, held:

"Within the meaning of Section 6835, Revised Statutes, which prescribes imprisonment for life as the punishment of the crime of burglariously entering an inhabited dwelling-house, a dwelling-house is inhabited when the family have gone for a vacation leaving servants in charge of the house, though when it is burglariously entered the servants may be temporarily absent upon an errand."

The facts in *Mason* are distinguishable from those in the present case, as in that case servants were left in charge of the house during the proprietor's absence. However, in the course of the opinion Chief Justice Shauck stated, at page 78:

"* * * A dwelling-house is a building which by the mode of its construction or reconstruction is suitable for a habitation. An inhabited dwelling-house is such a house used as a habitation. The ordinary use of a habitation embraces the protection and shelter of household goods and wearing apparel whether the inhabitants are present or absent. The proprietor of this dwelling-house was a school teacher. During the school year he inhabited it with his wife. When they went away to return at the close of his vacation, leaving their household goods and deities within its protecting walls and shades, they did not cease to inhabit it. * * * If this view is correct, it is of no legal significance whatever that servants were left in charge of the house during the absence of the proprietor and his wife."

We agree with that reasoning and believe that where the inhabitant of a dwelling house absents himself from it for a period of time, leaving therein household goods or other indicia of occupancy, intending to return to the house, he does not cease to inhabit it.

Where a person establishes one, or more than one,

home as a dwelling house, each retains the character of an "inhabited dwelling house" so long as he intends each such home to be a place of habitation for himself, even though he and members of his household are absent from it for a period of time.

The only effect which a length of the inhabitant's absence from such a house would have on its character as an "inhabited dwelling house" would be in connection with his intention of returning. Lapse of time, alone, is insufficient to change such character where the record clearly shows a fixed intention of returning. The *animo revertendi* is the controlling consideration.

This view appears to be the general rule. Annotation, 85 A. L. R. 428; 13 American Jurisprudence 2d 321, Burglary, Section 4. See, also, Perkins on Criminal Law (2 Ed.), 203, Section 1.

Appellant raises questions as to proof of entry and the trial court's instructions to the jury on the issue of alibi. Those questions relate principally to the weight of the evidence. An examination of the instructions given on the issue of alibi indicates that the instructions given were proper.

It is contended that the trial court erred in submitting instructions on aiding and abetting. Appellant argues that it was necessary to prove that he was actually present as he could not be charged in Ohio for acts done in Michigan. However, appellant overlooks the fact that under Section 1.17, Revised Code, an aider and abettor is tried "as if he were the principal offender." In other words, he is tried as if he did the acts himself and under such a statute physical presence is not required. 21 American Jurisprudence 2d 202, Criminal Law, Section 129; 22 Corpus Juris Secundum 253, Criminal Law, Section 86.

Appellant claims prejudicial error due to the activities of the sheriff at the trial. He complains that the sheriff not only escorted him to the courtroom but that he remained there and subsequently testified, although separation of witnesses was ordered, and that he was placed in

charge of the jury when it retired to deliberate. While appellant claims generally that the sheriff's presence was "impressive," he points to no specific acts which in themselves operated to his prejudice. In fact, the sheriff's only testimony was in connection with the identification of an exhibit and could not have been affected by what he heard during the course of the trial.

It is contended by appellant that the trial court erred in permitting a handwriting expert to compare the writing on a card, which was in Thomas' possession and which contained a list of items stolen, with the writing on a note given by appellant to the sheriff requesting flashlight batteries. It is claimed that the note was not properly identified as appellant's handwriting. However, the sheriff stated that the note came from appellant's cell and was handed to him personally on a tray. This was sufficient identification to permit its use as a handwriting sample.

Appellant argues in this court that the trial court abused its discretion in allowing only 15 minutes for argument on his motion for new trial and that he is being subjected to cruel and unusual punishment. It does not appear that those issues were raised in the Court of Appeals and thus we will not consider them now. *Toledo* v. *Reasonover,* 5 Ohio St. 2d 22.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MATTHIAS, O'NEILL, SCHNEIDER and DUNCAN, JJ., concur.

TAFT, C. J., and HERBERT, J., dissent in part.

TAFT, C. J., dissenting in part. I dissent from that part of the syllabus and of the judgment which construes the words "inhabited dwelling" in Section 2907.09, Revised Code, so as to include a dwelling from which the owners or those having any right to be present therein

have departed for an indefinite stay, leaving no one in charge, and in which no housekeeping is at the time being conducted and in which no usual processes of living are going on. See concurring opinion of Spear, J., in *State* v. *Mason* (1906), 74 Ohio St. 65, 79, 77 N. E. 283.

In my opinion, the legislative history of this statute and of Section 2907.10, Revised Code, clearly indicates a legislative intent not to so construe the words "inhabited dwelling."

So far as pertinent, Section 2907.09, Revised Code, reads:

"No person shall in the night season maliciously and forcibly break and enter an *inhabited dwelling house* or inhabited house trailer with intent to commit a felony, or with intent to steal property of any value.

"Whoever violates this section shall be imprisoned for life. Upon recommendation of mercy by the jury such person shall be imprisoned not less than five nor more than thirty years." (Emphasis added.)

So far as pertinent, Section 2907.10, Revised Code, reads:

"No person shall in the night season maliciously and forcibly break and enter, or attempt to break and enter an *uninhabited dwelling house,* uninhabited house trailer or a kitchen, smokehouse, shop, office, storehouse, warehouse, malthouse, stillhouse, mill, pottery, factory, watercraft, schoolhouse, church, meeting house, barn, stable, railway car, car factory, station house, hall, or other building * * * with intent to steal property of any value, or with intent to commit a felony.

"Whoever violates this section shall be imprisoned not less than one nor more than fifteen years." (Emphasis added.)

These statutory provisions, which were originally in the same statutory section, have been in substantially the same form since 1902 (95 Ohio Laws 561), except that the minimum penalty in Section 2907.09, Revised Code, has been reduced from ten to five years and the minimum pen-

alty in Section 2907.10, Revised Code, from five years to one year.

Prior to 1902, these statutory provisions were substantially the same except that no distinction was made between an inhabited and an uninhabited dwelling house and the penalty for breaking and entering a dwelling house or any other of the buildings specified was only one-to-ten years (82 Ohio Laws 161).

In *State* v. *Mason, supra* (74 Ohio St. 65), decided shortly after the General Assembly adopted the distinction between an inhabited and an uninhabited dwelling, this court had occasion to consider what the General Assembly intended by that distinction.

From the arguments of counsel which are reported in our official report of the case (74 Ohio St., at 67 to 74, inclusive), as well as from Judge Spears' concurring opinion (74 Ohio St. 79), and the facts included in the syllabus ("servants in charge of the house, though * * * temporarily absent upon an errand"), it is obvious that the portion of Chief Justice Shauck's opinion that is quoted in the majority opinion is dicta.

The contention of the defendant in *State* v. *Mason, supra* (74 Ohio St. 65, 73), is summarized as follows:

"In enacting this law and creating this classification, the Legislature of Ohio was merely following a classification that had previously been made by nearly all of the important states of this country and England * * *

"Burglary in these states is divided into two general divisions. The first grade is where the offense is committed while there is a human being in the dwelling-house at the time of the commission of the offense. The second where there is no one in the dwelling-house at the time. The first grade is in all cases punishable by extreme measures, and in the second by a much milder form of punishment. The reason for this difference is obvious, for in the first grade there is coupled with the offense against the *property* the much more serious crime of an offense against the *person.*"

The contention of the state in *State* v. *Mason, supra* (74 Ohio St. 65, 67 to 69), is summarized as follows:

"Before the passage of the act under consideration there was no classification of dwelling-houses in Ohio. All buildings used by men as places of abode were regarded as dwelling-houses, the law being only concerned with their *use* as dwellings, irrespective of the purpose for which they were built.

"But the last Legislature, as was suggested by defendant in error in the hearing below, realizing the danger to human life involved in the breaking and entering of dwelling-houses, undertook, by the passage of the act in question, to discourage this particular crime by attaching to it a penalty of the most severe character. At the same time, the Legislature doubtless realized that in the ordinary course of men's affairs there are many circumstances under which a house may not have a living soul dwelling in it for long periods of time, and yet preserve its identity as a dwelling-house. Summer-houses and winter-houses, houses left entirely unoccupied for long periods of time while their owners are following the dictates of business or pleasure, are recognized by the law as dwelling-houses. * * * [See 13 American Jurisprudence 2d, 321 Section 4, and Annotation "Vacancy or nonoccupancy of building as affecting its character as a 'dwelling' as regards burglary." 85 A. L. R. 428.]

"*For the extended periods during which such houses remain unoccupied the crime of breaking and entering them ordinarily involves no more danger to human life than that of breaking and entering a storehouse or any other of the half-dozen or more buildings mentioned in the statute.*

"These considerations justly gave rise to the *desire,* on the part *of the Legislature, to devise some classification* of dwelling-houses *in which* the *penalty to be imposed would be fairly proportioned to the damage sought to be prevented. For this reason, and no other that can possibly be imagined,* the Legislature was amply justified in

classifying dwelling-houses into 'inhabited' and 'uninhabited,' and providing a different penalty for the breaking and entry of each.'' (Emphasis added.)

The crime of breaking and entering an uninhabited dwelling house, as specified in Section 2907.10, Revised Code, is obviously a lesser included offense of the crime of breaking and entering an inhabited dwelling house that is specified in Section 2907.09, Revised Code. Hence, the judgment of the Common Pleas Court should be modified so as to reduce the sentence of defendant on each of the four counts from life imprisonment to a sentence of one to fifteen years.

HERBERT, J., concurs in the foregoing dissenting opinion.