[Cite as *State v. Washington*, 2014-Ohio-4578.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100994**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PHILLIP R. WASHINGTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577815-A

**BEFORE:** S. Gallagher, P.J., Rocco, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 16, 2014

**ATTORNEYS FOR APPELLANT**

Jaye M. Schlachet
Eric M. Levy
55 Public Square
Suite 1600
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Amy Venesile
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, OH    44113

SEAN C. GALLAGHER, P.J.:

{¶1}  Defendant Phillip Washington appeals from his conviction of burglary, felony and misdemeanor theft, breaking and entering, and vandalism crimes.  For the following reasons, we affirm.

{¶2} On the evening of August 31, 2013, Washington broke into three homes, causing damage to every building with the purpose of stealing copper.  Two of the homes were vacant, but both were being renovated by purchasers intending to either sell or live in the house.  Those two homes were identified with respect to the two burglary counts, along with the associated theft charges for actually removing copper fixtures. The third house, under construction and owned by the builder, was the subject of the felony breaking and entering, and felony vandalism charges.  Washington was apprehended within feet of the home under construction.  In that home, the damage caused by the break-in totaled $3,530, $1,000 of which was the cost to replace the copper plumbing.

{¶3} The police officers originally responded to a call from a concerned neighbor who reported seeing a white U-Haul van parked next to the home under construction and two males walk inside the house with flashlights.  Upon the officers' arrival, one of the males was seen exiting the house.  None of the officers was able to apprehend the second offender, whom Washington identified as "Jimmy."  Washington was found in a prone position with his arms on the back of his head, four or five feet from the house. Washington was immediately detained and placed under arrest.  A flashlight that was

identical to another flashlight found in one of the three properties was found within inches of Washington.

{¶4} At the same time as Washington's arrest, another officer checked the U-Haul van for occupants by peering through the windows. In the process, he saw garbage cans filled with scrap copper. The trash cans had city of Independence markings and were identifiable through serial numbers, linking Washington to two other homes undergoing renovations. The officer noted that the receptacles seemed suspicious in light of the fact that the van was parked in front the home being constructed. The city would not have issued those bins until the home was completed. Washington had the keys to the white U-Haul van, which turned out to be rented by Washington's then live-in girlfriend. She testified that Washington used the van without her permission.

{¶5} Washington elected for a bench trial. As related to the vacant homes, the trial court found Washington guilty of two counts of burglary in violation of R.C. 2911.12(A)(2) and two counts of theft in violation of R.C. 2913.02(A)(1), one being a felony. As it related to the home being constructed, the trial court found Washington guilty of breaking and entering in violation of R.C. 2911.13(A), theft in violation of R.C. 2913.02(A)(1), and felony vandalism in violation of R.C. 2905.05(B)(1)(b). The trial court merged the misdemeanor theft offense into the felony vandalism count before sentencing Washington to an aggregate two-year term of imprisonment on the remaining six charges.

{¶6} Washington timely appealed, advancing six assignments of error, several of which raise similar issues and will be combined for the sake of simplicity. In his first and second assignments of error, Washington claims that the guilty verdicts on every count were against the sufficiency of the evidence.[1] We find no merit to his arguments.

{¶7} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We will address each crime in turn.

{¶8} Washington was found guilty of felony vandalism in violation of R.C. 2909.05(B)(1)(b), which provides that "[n]o person shall knowingly cause physical harm to property that is owned or possessed by another, when * * * [r]egardless of the value of

---

[1]Washington, in his third assignment of error, claims the verdict was also against the manifest weight of the evidence. In his argument, however, Washington relied on the arguments raised in his sufficiency of the evidence assigned errors, and claims there was no evidence to support the verdict. We decline to separately address his arguments regarding the weight of the evidence. In addition, as a general theme, Washington claimed that he was convicted of entering the three properties despite the fact that the state only presented circumstantial evidence of the same. Washington conceded that circumstantial evidence was generally sufficient and provided no grounds to disavow the circumstantial evidence for the purposes of a manifest weight challenge. *See State v. Calimeno*, 8th Dist. Cuyahoga No. 98376, 2013-Ohio-1177, ¶ 26 (the unexplained possession of stolen property may create an inference that defendant is guilty of burglary), quoting *State v. Bice*, 12th Dist. Clermont No. CA2008-10-098, 2009-Ohio-4672, ¶ 31. As a result, we summarily reject and will not separately address those arguments as advanced.

the property or the amount of damage done," the property is necessary to the owner's profession, business, trade, or occupation. The state based the felony vandalism charge on the damage caused to the home under construction. Washington claims that there was no evidence that the damage caused by the intrusion was to property necessary in order for the owner to engage in her profession, business, trade, or occupation. We find no merit to Washington's argument.

{¶9} The home in question was under construction and owned by the construction company. The representative testified that the damage delayed the project for over three weeks. Washington claims that because the construction of the home was only impeded and the company was able to proceed, that the evidence was insufficient to support the charge that the property damaged was necessary to the owner's profession.

{¶10} In support, Washington relies on two cases, *In re J.A.J.*, 8th Dist. Cuyahoga No. 96506, 2011-Ohio-4828, and *State v. Sullivan*, 8th Dist. Cuyahoga No. 94269, 2010-Ohio-5357. In the former case, several individuals vandalized an elementary school's outdoor learning lab over a period of several days, destroying birdhouses and benches, and by painting obscene images on buildings and signs. *In re J.A.J.* at ¶ 2. The defendant was charged with felony vandalism based on the property being necessary to the owners' profession. However, the principal indicated that the lab was rendered unusable because of the obscene nature of the graffiti. *Id.* at ¶ 15. There was no evidence indicating that the defendant had participated in the graffiti, only that he had damaged a bench and a birdhouse. *Id.* The court held that J.A.J.'s actions did not

support an adjudication because there was no evidence that the birdhouses and benches were necessary to the utilization of the outdoor area. *Id.* at ¶ 20-21. The decision is necessarily limited by that lack of evidentiary support.

{¶11} In *Sullivan*, this court reached a similar conclusion. In that case, this court reversed a conviction, again based on R.C. 2909.05(B)(1)(b), where the state did not present sufficient evidence that a broken window prevented a neighborhood community center from operating. The community center boarded over the broken window and continued operation. *Id.* at ¶ 15.

{¶12} Both cases are inapplicable in light of the facts as presented at Washington's trial. The owner of the home under construction specifically testified to a three-week delay to replace the damaged property. The current case is akin to *State v. Glass*, 10th Dist. Franklin No. 11AP-890, 2012-Ohio-2993, in which the Tenth District upheld a similar conviction based upon evidence of a defendant breaking a seal over a residential electric meter owned by the city. *Id.* at ¶ 36. Although the evidence demonstrated that the seal was not necessary for the provision of electricity to the residence, the city could still provide electricity to the residence, the court held that the seal was necessary to protect the meter from harm or unauthorized removal, and to prevent people from stealing electricity from the city. *Id.* at ¶ 37. The court concluded that the seal was therefore necessary in order for the city to conduct its overall business of providing electricity to the public, and the state proved a violation of R.C. 2909.05(B)(1)(b). *Id.* at ¶ 37; *see also State v. Coleman*, 2d Dist. Montgomery No. 24955, 2014-Ohio-856 (police officer's

portable radio necessary to perform his occupation); *In re J.H.*, 6th Dist. Erie No. E-11-038, 2013-Ohio-632 (extraordinary effort to remain open while repairing damage to sprinkler system satisfied R.C. 2909.05(B)(1)(b) charge).

{¶13} In this case, the contractor's occupation is building a complete home. This is not a case where the contractor is merely providing services to an owner of the property. The owner is the builder, and thus, has an interest in the timely completion of the project. Although the damage did frustrate, but did not preclude, the ability to continue construction of the home, the property was necessary to the owner's ability to conduct its business of providing a completed product to the ultimate purchaser. In making the repairs, the construction of the final product was delayed. Washington caused damage, delaying the construction of the home by three weeks and, by implication, the property damaged, the home being sold, was necessary to the owner's profession. We overrule Washington's arguments to the contrary.

{¶14} Washington was found guilty of theft in violation of R.C. 2913.02(B)(2), which provides that "if the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars," the violation is a felony. In this case, the owner testified that the cost to replace the copper piping in the relevant home was $1,000. Washington claims this evidence lumped the cost to repair the damaged piping with the value of the piping itself, and according to his logic, the value of the stolen property necessarily was less than $1,000. Washington's argument is misplaced.

{¶15} R.C. 2913.61(D) defines "stolen property" for the purposes of determining the value of the property. The legislature has expressly provided that the value of any "other thing that has intrinsic worth to its owner and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss." R.C. 2913.61(D)(1). Further, the value of "personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, * * * which retains substantial utility for its purpose regardless of its age or condition, is the cost of *replacing the property* with new property of like kind and quality." (Emphasis added.) *Id.* In both those definitions, the legislature specifically delineated the cost to replace the property rather than limiting the value to the cost of the items themselves, unlike R.C. 2913.61(D)(3), which defines the value of personal or real property not otherwise defined as the fair market value of the item. *See State v. Oren*, 12th Dist. Madison No. CA2012-05-010, 2013-Ohio-531, ¶ 12 (cost to replace the property is the appropriate measure of the value of the stolen property and not the value of the individual items).

{¶16} In this case, the owner of the property, relevant to the felony theft charge, testified that it would cost $1,000 to replace the plumbing stolen from the home. The additional repairs to fix all the damage totaled over $3,500. Washington's argument that it was impossible to find him guilty of the felony theft is therefore without merit. The

state presented some evidence that the cost to replace the stolen property equaled or exceeded $1,000.

{¶17} Finally, as it relates to Washington's sufficiency of the evidence arguments, he claims that there was insufficient evidence to convict him of the burglary charges relating to the two vacant homes. Washington claims that the state failed to introduce any evidence that the homes were permanent or temporary habitations for the purposes of the burglary statute. We find no merit to his claims.

{¶18} The trial court found Washington guilty of two counts of burglary in violation of R.C. 2911.12(A)(2), which provides in pertinent part that no person, by force, stealth, or deception, shall trespass in an occupied structure when any person is likely to be present, "with the purpose to commit in the habitation any criminal offense." Washington emphasizes the fact that the legislature expressly indicated that a violation occurs if the offender intended to commit a criminal offense in a habitation, to be differentiated from an "occupied structure." Washington does not challenge the fact that the two homes were "occupied structures" within the statutory meaning.[2] We find no merit to Washington's argument.

_____

[2]At trial, Washington raised issues with the definition of "occupied structure." The term "occupied structure" is defined as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, * * * [that] is *maintained as a permanent or temporary dwelling*, even though it is temporarily unoccupied and whether or not any person is actually present." (Emphasis added.) R.C. 2909.01(C)(1). On appeal, Washington limited his arguments to those addressing the definition of dwelling and habitation. Our resolution of his appellate arguments necessarily impacts any arguments he could have raised as to the definition of "occupied

**{¶19}** As the Ninth District observed, "the term habitation is not a word with special or technical meaning. Indeed, habitation is not defined in the Revised Code. When words in a statute are not defined, they are to be 'construed according to the rules of grammar and common usage.'" *State v. Snyder*, 192 Ohio App.3d 55, 60, 2011-Ohio-175, 947 N.E.2d 1281 (9th Dist.), citing R.C. 1.42. The Ninth District noted in *Snyder*, that *Black's Law Dictionary* defined "habitation" as a "'dwelling place; a domicile.'" *Id.*, quoting *Black's Law Dictionary* 729 (8 Ed.2004); *see also Glaros v. Cleveland Trust Co.*, 164 Ohio St. 511, 518, 132 N.E.2d 220 (1956) (noting that "habitation" is defined as "dwelling"). "Habitation," therefore, is synonymous with "dwelling."

**{¶20}** "Dwelling" is otherwise defined in the Ohio Revised Code and generally, it must be presumed the legislature is aware of other provisions of the Revised Code when drafting statutes. *State v. Maurer*, 15 Ohio St.3d 239, 254, 473 N.E.2d 768 (1984). A "dwelling" is "a building or conveyance of any kind that has a roof over it and that is *designed to be occupied* by people lodging in the building or conveyance at night * * *." (Emphasis added.) R.C. 2901.05(D)(2); R.C. 1321.51, adopting 15 U.S.C. 1602 (dwelling means a residential structure containing family housing units, or individual units of condominiums or cooperatives). This must be contrasted with the legislature's specific definition of an "occupied dwelling," defined as "a structure that is used in whole or in part as a home, residence, or sleeping place by one person who

structure."

*maintains a household * * *.*" (Emphasis added.) R.C. 2715.011(C); R.C. 2737.01(F). Thus, the sine qua non of a "dwelling" is the characteristic of its design for occupation, not necessarily the actual occupation. *See State v. Sharp*, 8th Dist. Cuyahoga No. 86827, 2006-Ohio-3158, citing *State v. Green*, 18 Ohio App.3d 69, 72, 480 N.E.2d 1128 (10th Dist.1984) (the structure's characteristic to be an "occupied structure" depends more on the residential nature of the dwelling structure rather than the propensity to actually contain an inhabitant) and *State v. Cantin*, 132 Ohio App.3d 808, 726 N.E.2d 565 (8th Dist.1999) (addressing the likelihood that a person would be present during the break-in for the purposes of the burglary statute). Only the definition of "occupied dwelling" implies a current occupation.

**{¶21}** Washington's sole argument relies on *State v. Lisiewski*, 20 Ohio St.2d 20, 252 N.E.2d 168 (1969), in which the Ohio Supreme Court resolved the difference between an inhabited and uninhabited dwelling. Inasmuch as the Revised Code no longer distinguished crimes based on the inhabited nature of a dwelling, Washington's reliance is misplaced. The Ohio Supreme Court, however, noted that a dwelling-house is "a building which by the mode of its construction or reconstruction is suitable for a habitation." *Id.* at 22. Again, the focus was on the design of the building, and not the status of the current occupation.

**{¶22}** In this case, both of the homes relating to the burglary charges were dwellings, and thus habitations, for the purposes of R.C. 2911.12(A)(2). Both homes were structures designed for residential occupation and indeed intended for that purpose

following the renovation periods. The owners were in and out of the house on a regular basis. The fact that the properties were undergoing renovations prior to any further actual occupation did not alter the characteristics of the homes from being dwellings or habitations to some other form of structure. Both homes were structures designed with the purpose of being suitable for habitation. We accordingly overrule Washington's arguments to the contrary. Washington's first and second assignments of error are overruled.

{¶23} In his fourth assignment of error, Washington claims that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence in violation of Washington's constitutional rights.

{¶24} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶25} Washington argues that his counsel failed to file a motion to suppress Washington's warrantless arrest, conducted without probable cause, and the search of the U-Haul van. Neither of those arguments identifies any evidence to be suppressed, in contravention of App.R. 16(A)(7), and therefore, even if Washington's attorney was deficient, we are unable to determine whether the failure to file the motion to suppress prejudiced Washington so as to deprive him of a fair trial. We overrule the fourth assignment of error.

{¶26} In his fifth and sixth assignments of error, Washington advances similar arguments, whether the theft offenses, which supplied the criminal purpose element of the burglary offenses, and the vandalism offense, supplying the criminal intent for the breaking and entering offense, should have merged with the respective burglary and breaking and entering offenses for the purposes of sentencing. In other words, Washington believes the trial court should have only sentenced him on two burglary and one breaking and entering charges, rather than all six counts. We find no merit to Washington's claim.

{¶27} When a defendant's conduct results in the commission of two or more offenses, that conduct can be charged separately, but the defendant can only be convicted and sentenced for one offense. R.C. 2941.25(A). In determining whether offenses are allied and subject to merger, courts start with a review of the defendant's conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44. "If the multiple offenses can be committed by the same conduct, then the court must determine

whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). If we answer both questions affirmatively, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50.

{¶28} This court has repeatedly held that once a defendant entered the structure with an intent to commit a crime inside, the crime of burglary was complete. *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 32, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 95243, 2011-Ohio-3051, ¶ 80. Any crimes actually committed once the offender gained access were committed with separate conduct. *Id.* The same rationale applies with respect to the vandalism and breaking and entering counts. The breaking and entering occurred the moment Washington trespassed with a criminal purpose. Any actual offenses committed after the burglary and breaking and entering was separate conduct. *See State v. Ballard*, 8th Dist. Cuyahoga No. 98355, 2013-Ohio-373 ("when one offense was complete before another occured, the two offenses are committed separately"); *State v. Maddox*, 8th Dist. Cuyahoga No. 96885, 2012-Ohio-478 (noting the difference between the vandalism damage caused by the act of breaking and entering and the damage caused after the breaking and entering was completed for the purposes of the merger analysis). The theft and vandalism acts themselves were not actually necessary to committing the burglary and breaking and entering crimes, and therefore, it cannot be said that the same conduct resulted in the

commission of multiple crimes. This is dispositive, and we overrule the fifth and sixth assignments of error.

**{¶29}** We note, however, that this issue may be in need of clarification by the legislature or the Ohio Supreme Court. The burglary statute expressly provides that an offender need only have the purpose to commit a criminal offense to accompany the trespass. R.C. 2911.13(A). No theft need occur for a burglary to be committed. In this respect, it can be argued that the legislature contemplated separate punishments. *See State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13 (the conduct required to commit a RICO violation is independent of the conduct required to commit the underlying predicate offenses and therefore the legislature specifically contemplated a RICO violation to be a separately punishable offense). A plausible argument to the contrary could also be made; i.e., that the legislature intended the burglary-type charges to encompass the underlying crime occurring inside the structure. Until this issue is resolved, however, we shall continue to apply our precedent establishing that the same conduct cannot constitute the crime of theft and burglary in light of the wording of the statute; unless the facts indicate that the crimes somehow occurred simultaneously, as it does in situations where the vandalism occurred as a product of the breaking and entering. *See*, *e.g.*, *State v. Maddox*, 8th Dist. Cuyahoga No. 96885, 2012-Ohio-478, ¶ 10.

**{¶30}** For the foregoing reasons, Washington's conviction is affirmed.

**{¶31}** It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
MARY EILEEN KILBANE, J., CONCUR