[Cite as *State v. Hayes*, 2017-Ohio-7718.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 105048

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANGELA D. HAYES

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599682-A

**BEFORE:** S. Gallagher, J., Keough, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 21, 2017

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, Ohio   44118


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Amanda Hall
Assistant Prosecuting Attorney
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Angela Hayes seeks to overturn her convictions for three separate instances of passing bad checks and an aggregated grand theft of over $10,000. On appeal, Hayes argues the following: (1) that there was insufficient evidence to show she intended to defraud anyone on the charges of passing bad checks; (2) that her trial counsel was ineffective for failing to investigate a potential witness who would confirm Hayes's insufficient-funds story; and (3) that the four convictions should have merged because they all stemmed from "one insufficient funds saga" and the record "is devoid of any [allied-offense] analysis made during sentencing." Finding no merit to any of the arguments, we affirm.

{¶2} Hayes owned and operated two companies, but each maintained a bank account at a separate financial institution. For the ease of discussion, we will refer to Hayes as the owner of the accounts because the separate nature of the corporate assets is irrelevant for our purposes. Hayes opened an account at Huntington Bank that largely remained in the red — the account had a negative balance for 39 days surrounding the dates of the suspect transactions. In early April 2015, Hayes attempted to deposit a check worth $21,346 into the Huntington Bank account. In three separate transactions over a three-day period, Hayes issued checks from the Huntington Bank account to be deposited into her other corporation's U.S. Bank account. The three checks totaled over $11,000. Hayes withdrew over $10,000 from the U.S. Bank account over the same three-day period, and that act was the basis of the aggregated grand theft charge.

{¶3} The $21,346 check that Hayes attempted to deposit into her Huntington Bank account could not be processed. Hayes's corporate name was wrong, and the two-party check lacked the signature of the second party that was necessary before the check could be deposited. According to Hayes, her employee had dropped off the check at a Huntington Bank branch but never obtained a receipt of deposit and Hayes was called by someone at Huntington Bank to pick up the faulty check. Hayes then had the drafter redraw the check, and after some legal gymnastics with respect to trade names of Hayes's corporation, the check was deposited into the Huntington Bank account toward the end of April 2015.

{¶4} At trial, Hayes claimed that she had relied on the $21,346 check to cover the U.S. Bank transactions. Instead of attempting to discredit Hayes's check-cashing saga, the state elicited testimony demonstrating how Hayes had written the three checks to U.S. Bank without sufficient funds and, once the $21,346 check meant to cover those checks was deposited, Hayes immediately withdrew the money before U.S. Bank was made whole. In May 2015, U.S. Bank also sent Hayes a statutorily required notice of dishonor, seeking repayment within ten days. Hayes did not repay or otherwise satisfy the debt. From this evidence, the jury found that Hayes had intended to defraud U.S. Bank by passing three bad checks knowing the checks would be dishonored and, in addition, had committed grand theft of over $10,000 by withdrawing that amount after the fact.

**{¶5}** Before trial, Hayes proffered a letter purportedly written by a Huntington Bank branch manager from the location where she attempted to deposit the $21,346 check. The letter stated:

> A two party check was presented for deposit in the beginning of April 2015. The deposit was rejected due to the names on the check not being accurate. We could not get in contact with [a Hayes employee] who deposited the check so Angela Hayes picked up the check and was referred to the Pavillion branch. Angela Hayes had her attorney expedite the fictitious name update to redeposit a new check number 015470 amount of $21,346.00 on April 21st, 2015.

Hayes did not present her employee as a witness to verify the unfulfilled deposit or her attorney who resolved the fictitious name issue.

**{¶6}** In the first assignment of error, Hayes claims her convictions for passing bad checks were based on insufficient evidence because the state failed to prove that Hayes purposely defrauded U.S. Bank by issuing checks knowing the checks would be dishonored. Importantly, Hayes is not challenging her conviction for grand theft.

**{¶7}** A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶8}** In order to convict an offender of passing bad checks under R.C. 2913.11(B), the state must prove that the offender, with purpose to defraud, transferred or issued a check or other negotiable instrument knowing that it would be dishonored. "'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). For the purposes of passing bad checks, an offender who issues a check is presumed to know that it will be dishonored if the check was refused for insufficient funds within 30 days of presentment and the liability is not discharged by payment or satisfaction within ten days after receiving the notice of dishonor. R.C. 2913.01(C)(2); *see also* tr. 490:8-21.

**{¶9}** In this case, the jury was free to presume that Hayes passed the bad checks knowing the checks would be dishonored because of the statutory presumption under R.C. 2913.11(C)(2). The three checks were properly refused payment for insufficient funds within 30 days. *Id.* U.S. Bank sent a notice of dishonor that Hayes admitted to receiving, and she failed to repay U.S. Bank the value of the written checks within ten days. *Id.* Further, "defraud" is defined as receiving a benefit by deception. R.C. 2913.01(B). The jury heard evidence that Hayes attempted to deposit a $21,346, two-party check without one of the parties' signatures and then immediately wrote three checks from that account totaling over $10,000. Even after learning that the $21,346 check was not accepted and after belatedly depositing the check, Hayes failed to satisfy or discharge the debt to U.S. Bank. She obtained a benefit by deception in that she presented checks knowing they would be dishonored for insufficient funds according to

the statutory presumption. *State v. Hines*, 12th Dist. Butler No. CA94-09-182, 1995 Ohio App. LEXIS 2823, 7 (July 3, 1995), citing *State v. Stemen*, 90 Ohio App. 309, 317, 106 N.E.2d 662 (2d Dist.1951) (intent to defraud arises when offender has no reasonable grounds to believe the funds in the account would be sufficient to cover the checks issued).

{¶10} Further, and in addition to the statutory presumption, the only time the Huntington Bank account had a positive balance was the ten days after the $21,346 check was belatedly deposited, but before Hayes liquidated the account. The jury was free to infer from the fact that the account remained negative for well over a month surrounding the disputed transactions that Hayes had no reasonable grounds to believe that she had the necessary funds to cover the three checks issued to U.S. Bank. *State v. Bankston*, 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, ¶ 41 (account documents demonstrated a history of a negative balance for 21 days and that was sufficient for the jury to infer an intent to defraud). Her three convictions for passing bad checks are based on sufficient evidence.[1]

{¶11} In her second assignment of error, Hayes claims that but for her attorney's failure to subpoena a branch manager for Huntington Bank, who would have merely bolstered Hayes's testimony regarding the unsuccessful attempt to deposit the $21,346 check in the first week of April, the jury would not have convicted her of passing bad

---

[1]Hayes also indicated that if we reversed the convictions of passing bad checks for the lack of sufficient evidence, then we should also reverse her grand theft conviction. In light of the fact that we found sufficient evidence of passing bad checks, we need not address the derivative argument.

checks. Hayes, however, ignores the statutory presumption from R.C. 2913.11(C)(2). App.R. 16(A)(7).

**{¶12}** In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

**{¶13}** For the sake of discussion, in light of the fact that Hayes must prove both prongs, we will solely address the alleged prejudice stemming from trial counsel's failure to secure the Huntington Bank branch manager. Hayes cannot demonstrate any prejudice caused by the failure to call a witness who would have presented duplicative evidence on an undisputed issue.

**{¶14}** The jury heard Hayes's testimony demonstrating the sequence of events that the branch manager would have confirmed — that there was an unsuccessful attempt to deposit the $21,346 check in the first week of April and it was not deposited into the Huntington Bank account until late April. Instead of disputing the defense's theory, the state introduced evidence that even after the $21,346 check was finally deposited, after Hayes had undisputed knowledge that she had written checks to U.S. Bank in reliance on

that incomplete deposit, Hayes immediately withdrew the proceeds from the Huntington Bank account in a series of transactions without making U.S. Bank whole. Hayes closed and liquidated her Huntington Bank account within ten days — the only period of time the account ever had a positive balance.

{¶15} In fact, Hayes's actions following the belated deposit actually bolster the state's case. Hayes twice benefitted from a single deposit in an account that for the most part maintained a negative balance — demonstrating she never intended to have sufficient funds to cover the checks deposited in the U.S. Bank account. The letter is not exculpatory; it confirmed facts not actually in dispute.

{¶16} Notwithstanding, the whole of Hayes's argument in support of the prejudice prong is that "[a]ppellant believes that she would have been able to prevent a guilty verdict, had the necessary witness who authored the aforestated letter been issued a subpoena to appear to court, and this acted to her prejudice." This in and of itself is insufficient under App.R. 16(A)(7) and in contravention of the standard that places the burden on the defendant to prove both prongs of the ineffective assistance of counsel claim. *Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, at ¶ 223, citing *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, and *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. All we are left with is Hayes's "belief" that the letter would have resulted in a complete acquittal. We were provided no citations to authority (other than blanket citations to black letter law not in dispute) or any

legal analysis to consider. We were presented with a conclusion and not one based on the reasonable inferences derived from the evidence introduced at trial.

{¶17} Most important, Hayes ignores the statutory presumption relieving the state of its burden to otherwise prove that Hayes presented checks knowing those instruments would be dishonored. R.C. 2913.11(C)(2). It is undisputed that U.S. Bank took the necessary steps to provide Hayes the notice of dishonor in May 2015 and that after the $21,346 check was finally deposited into the Huntington Bank account, Hayes failed to pay U.S. Bank.

{¶18} Hayes's position on appeal is illogical, relying on an argument that appears favorable only when contrary positions are ignored.[2] In this particular case, the reason for the delay in processing the $21,346 check in the beginning of April is irrelevant when the statutory presumption under R.C. 2913.11(C)(2) is considered. "[T]he presumption of knowledge of dishonor does not arise unless the instrument is presented for payment within 30 days" and the instrument is not satisfied within ten days of the notice of dishonor. R.C. 2913.11, 1974 Committee Comment to H.B. No. 511. The branch manager's testimony would not have explained why Hayes failed to satisfy the debt to U.S. Bank when the $21,346 check meant to cover the U.S. Bank deposits finally cleared.

---

[2] For an unexplained reason, and although it was the crux of the state's case during trial, the state's brief also ignored the statutory presumption from R.C. 2913.11(C)(2). Tr. 459:10-25. Nevertheless, Hayes bears the burden of demonstrating error on appeal, so we need not dwell on the state's failure. Hayes referenced the statutory presumption in her briefing, but she dismissed it with the unsubstantiated declaration that U.S. Bank's notice of dishonor was statutorily deficient. The jury was instructed otherwise, and Hayes has not challenged the jury instructions.

She obtained a benefit by deception, i.e., with the purpose to defraud, in that it is presumed she issued checks knowing they would be dishonored for insufficient funds. R.C. 2913.11(C)(2). Since the presumption arises after the belated deposit, substantiating the reason for the delay is immaterial.

{¶19} Having failed to demonstrate prejudice even if we presumed a deficient performance and having failed to address the statutory presumption of guilt, as required under App.R. 16(A)(7) to prove an error occurred, Hayes's second assignment of error must be overruled.

{¶20} Finally, Hayes argues in her third assignment of error that the three counts of passing bad checks and the grand theft count must merge as a matter of law because all four counts were the product of one insufficient-funds saga. According to Hayes, the "various counts are all repetitive and they merely try to punish her for one and the same act four times."[3]

{¶21} Under R.C. 2941.25, courts must use a three-part inquiry to determine whether a defendant can be convicted of multiple offenses if those offenses arose from the same act or transaction:

> (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus

---

[3]Hayes also believes that the trial court bears the burden of ensuring compliance with R.C. 2941.25 under *State v. Rogers*, 8th Dist. Cuyahoga No. 98292, 2013-Ohio-3235. Hayes did not raise any allied-offense issues at sentencing. In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3, the Ohio Supreme Court held that a defendant forfeits all but plain error, and a forfeited error is not reversible unless the error affected the outcome of the proceeding and is necessary to correct a manifest miscarriage of justice. The trial court has no burden under *Rogers*.

or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. In addition, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26.

{¶22} The test is stated in the disjunctive form: the existence of any one prong suffices for the imposition of separate sentences. *State v. Esner*, 8th Dist. Cuyahoga No. 104594, 2017-Ohio-1365, ¶ 6. Thus, in order to reverse a conviction, the defendant has to address all prongs of *Ruff*. It is no longer sufficient to focus on the offender's conduct in isolation on appeal. *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11 (the conduct-based analysis from *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, has been rendered obsolete); *see also State v. Dennis*, 8th Dist. Cuyahoga No. 104742, 2017-Ohio-4437, ¶ 21.

{¶23} We summarily find no merit to Hayes's final argument. Although the grand theft was facilitated by the passing of bad checks, and thus could be considered a single course of conduct, the crimes were all based on separate and distinct acts. *See, e.g., State v. Smith*, 11th Dist. Geauga No. 2014-G-3185, 2014-Ohio-5076, ¶ 26. The individual crimes of passing bad checks were completed once Hayes presented the checks to U.S. Bank for deposit on three separate occasions knowing the checks would dishonored. *See, e.g., State v. Washington*, 8th Dist. Cuyahoga No. 100994, 2014-Ohio-4578, ¶ 28

(once one crime is complete, the commission of a second crime is separate and distinct from the commission of the first). Hayes then withdrew money on three other occasions, forming the basis of the aggregated grand theft offense. *Esner* at ¶ 8. Hayes has not addressed the separate conduct or dissimilar import prongs of the allied-offense analysis, and it is not a function of an appellate court to argue those issues on her behalf. App.R. 16(A)(7). Accordingly, her third assignment of error is overruled.

**{¶24}** We affirm.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
MELODY J. STEWART, J., DISSENTS WITH SEPARATE OPINION


MELODY J. STEWART, J., DISSENTING:

**{¶25}** Hayes defended the charges against her by claiming that she lacked the requisite "purpose to defraud" by issuing a check "knowing that it will be dishonored[.]" *See* R.C. 2913.11(B). She testified that an earlier deposit one of her employees had made to the first bank account had been rejected without her knowledge, so she had no idea that checks she wrote on that account for deposit into the second bank account would be rejected for want of sufficient funds.

**{¶26}** The centerpiece of Hayes's defense should have been the testimony of the bank manager of the first bank account, who would have given testimony supporting Hayes's version of the facts. That witness was identified to the state just prior to jury selection, with defense counsel's statement to the court that "there's one more witness that my client determined that she would like to have, and she believes it's an important witness to her case[.]" When the court asked defense counsel when she learned the identity of the witness, defense counsel said "[t]here were conversations with my client about potentially bringing him in. However, she was told that the witness was not in town." The court denied the continuance. The following day, after the jury had been empaneled, defense counsel told the court that "I received a letter today from my client that came from the branch manager" and that the letter was "almost an exculpatory letter that will help us a lot through the trial." Hayes requested to have the letter admitted as evidence in lieu of the branch manager's testimony. The court noted that the letter was hearsay and made an initial ruling to exclude it. The state then objected to Hayes's request to compel the branch manager's attendance at trial because that person had not

been named on Hayes's witness list. Defense counsel told the court that she had been unable to subpoena the branch manager prior to trial because she was unable to determine the branch manager's identity. The court ultimately refused to order the branch manager to appear at trial, but told defense counsel that if she was able to produce him, it would allow his testimony subject to the state's right to voir dire the branch manager. The branch manager did not testify and Hayes proffered his letter into the record.

{¶27} Although we give defense counsel the benefit of the doubt in matters of trial strategy, *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 115, a failure to investigate is not a matter of trial strategy. *State v. Schlosser*, 2d Dist. Montgomery Nos. 17192 and 17193, 1999 Ohio App. LEXIS 2386, at 24 (May 28, 1999). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This duty is one that requires defense counsel to "investigate 'the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.'" *State v. Johnson*, 24 Ohio St.3d 87, 89, 494 N.E.2d 1061 (1986), quoting 1 A.B.A. Standards for Criminal Justice (1982 Supp.), No. 4-4.1.

{¶28} Defense counsel did not investigate this aspect of the case. By defense counsel's own admission, it was Hayes who ascertained the identity of the branch manager; it was Hayes who obtained the letter from the branch manager; and it was Hayes who concluded that the branch manager's testimony would be helpful to the

defense. Defense counsel told the court that Hayes had been told that the branch manager was unavailable and "[f]or a long time, [Hayes] was trying to reach him and schedule a meeting to talk to the person, to the manager, and she wasn't able to do that."

{¶29} Not only did defense counsel fail to investigate, she was unaware of the value of the branch manager's evidence. Defense counsel admitted to the court prior to jury selection that "I had no conversation with" the branch manager prior to trial. In addition, it was Hayes who "formed her opinion then that it is important" to call the branch manager as a witness. This is not a case where the client investigated on her own, without informing defense counsel. Defense counsel was aware of the branch manager — she stated that she had "conversations with my client about potentially bringing him in[.]" Despite those conversations, defense counsel conceded that the branch manager had not been named on her witness list because "we weren't sure if we want him or not." It is difficult to understand how defense counsel could make an informed decision to know whether she wanted the branch manager as a witness without first speaking to him. This lack of investigation resulted in defense counsel asking the court to either grant a continuance or issue a subpoena to compel the branch manager's attendance at trial. The court denied those requests, ultimately dooming any hope that Hayes had of introducing the letter into evidence. Hayes has established the deficient performance prong of the *Strickland* test.

{¶30} The branch manager's letter was sufficiently probative of a lack of intent to defraud that there is a reasonable probability that had it been offered into evidence, Hayes

would have overcome the presumption of fraud such that the outcome of trial would have been different.

**{¶31}** Intent is the key point here.   The state had to show that Hayes acted with a specific intent to defraud.   *See* R.C. 2901.22(A) (defining "purpose" as having a "specific intent to cause a certain result.").   The bank manager's letter shows that Hayes had no knowledge that the deposit had been dishonored.   This was important because the facts show that Hayes wrote checks totaling $11,065 from the Huntington account for deposit into the U.S. Bank account, and that she withdrew only $10,000 from the U.S. Bank account — an amount less than the Huntington deposit.   Hayes engaged in fraud if she knew that the Huntington deposit had been dishonored and wrote the checks anyway.

**{¶32}** The branch manager's letter that Hayes proffered into evidence supported her assertion that she was unaware that the initial deposit had been dishonored.   The letter stated:

> A two party check was presented for deposit in the beginning of April 2015.   The deposit was rejected due to the names on the check not being accurate.   We could not get in contact with [a Hayes employee] who deposited the check so Angela Hayes picked up the check and was referred to the Pavillion branch.   Angela Hayes had her attorney expedite the fictitious name update to redeposit a new check number 015470 amount of $21,346.00 on April 21st, 2015.

**{¶33}** The letter supports Hayes's assertion that she was unaware that the check her employee deposited into her account had been dishonored when she wrote the checks and made the withdrawals from the account.   The letter indicates that it was after Hayes

issued drafts against the account and made a withdrawal that the bank contacted her and Hayes rectified the situation by redepositing the check.

{¶34} The majority concludes that evidence from the bank manager would have been cumulative to Hayes's testimony that she had been unaware that the deposit had been dishonored when she wrote the checks and made the withdrawals at issue. This conclusion is at odds with comments the state made in closing argument, where it implied that Hayes had fabricated her version of events, telling the jury in closing argument that "[s]he's trying to con you, ladies and gentlemen." When referring to five recordings of police interviews with Hayes, the state noted that "[i]n four of them she never mentions the Huntington Bank manager." The state also told the jury that Hayes had "subpoena power" and that if "[y]ou want that manager's testimony, put them [sic] on the stand." The state's argument was intended to make the jury think that Hayes fabricated the bank manager. Had Hayes offered the bank manager's letter and testimony, she could have eliminated any questions about the veracity of her defense. It is reasonably likely that the trial would have ended differently. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶35} The majority also focuses on Hayes's actions taken after the crimes had allegedly been completed as proof of her intent to defraud, using the R.C. 2913.11(C)(2) statutory presumption that she presented checks knowing that they would be dishonored. The R.C. 2913.11(C)(2) presumption is not irrebutable and cannot by itself defeat an ineffective assistance of counsel claim. Hayes could defeat the presumption by showing

that she had no idea that the Huntington deposit had been dishonored, which set in motion the falling dominos resulting in there being insufficient funds to cover the checks drawn on her U.S. Bank account. The evidence showed that Hayes's employee made a $21,346 deposit to Hayes's Huntington account and then Hayes wrote $11,065 in checks from Huntington for deposit into U.S. Bank. At the time she wrote the checks, there were sufficient funds in the Huntington account to cover them. Hayes then withdrew $10,000 from the U.S. Bank account. If Hayes did not know that the Huntington deposit had been dishonored, she could reasonably think that she had sufficient funds in the U.S. Bank account to cover the withdrawals. The state's assumption that Hayes knew she did not have sufficient funds to prove the fraud is premised on her knowing that the Huntington deposit had been dishonored. The bank manager's letter would have refuted the claim that Hayes knew her deposit had been dishonored.

{¶36} In fact, the argument the state makes on appeal supports the first prong of Hayes's ineffective assistance of counsel claim: it states that "the decision to subpoena the Huntington Bank manager was simply too late, and Appellant should not have waited until the day of the trial to attempt to subpoena the witness." Appellee's brief at 7. As for the prejudice claim, the state makes a rote statement about "the significant evidence" against Hayes and her failure "to show the significance of the witness." *Id.* The state's assertion that Hayes failed to show the significance of the bank manager was refuted by its assertion at trial that Hayes should have called him as a witness. And if the evidence against Hayes was one-sided, it was because defense counsel failed to provide

countervailing evidence that she lacked the purpose to defraud. For the foregoing reasons, I would sustain the second assignment of error and reverse for a new trial.